# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CITIZEN ONE, INC. d/b/a CITIZEN CHANGE and
CE TRADEMARK, LLC,

                        Plaintiffs,

                        v.

GBG SEAN JOHN LLC,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

21-cv-1199

**<u>COMPLAINT</u>**

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs Citizen One, Inc. d/b/a Citizen Change ("<u>Citizen Change</u>") and CE Trademark, LLC ("<u>CE Trademark</u>" and together with Citizen Change, the "<u>Plaintiffs</u>"), by their attorneys, Jonathan D. Davis, P.C., for their Complaint against Defendant GBG Sean John LLC ("<u>GBG SJ</u>" or "<u>Defendant</u>"), allege as follows:

## <u>PRELIMINARY STATEMENT</u>

1. This is an action for unfair competition under the Lanham Act (15 U.S.C. §1125(a)), common law trademark infringement, common law unfair competition, deceptive practices under N.Y. Gen. Bus. Law § 349, common law unjust enrichment, and breach of contract.

2. By this action, Plaintiffs seek to prevent Defendant – the company that purchased assets related to the SEAN JOHN brand founded by Sean Combs p/k/a Diddy ("<u>Mr. Combs</u>"), a world-famous entrepreneur, entertainer, executive, and cultural visionary – from, among other things, misappropriating the trademark "VOTE OR DIE," which Defendant never acquired, and which is owned by Citizen Change, a not-for-profit headed by Mr. Combs, and by CE Trademark.

3.   The VOTE OR DIE mark that Defendant is now using in commerce, and seeking to register with the United States Patent and Trademark Office ("USPTO"), was first registered by Citizen Change, a corporation that never had any connection to or affiliation with Defendant.

4.   The rights to the VOTE OR DIE mark that were first obtained by Citizen Change, (the "VOTE OR DIE Mark") after significant time, expense, and effort, have not been abandoned, and were never assigned or otherwise transferred to Defendant.

5.   Citizen Change, however, later granted CE Trademark the right to future and continuous use of the VOTE OR DIE Mark, as well as the right to develop and expand a family of VOTE OR DIE marks in various classes, but retained its common law rights in and to that mark.

6.   Citizen Change and CE Trademark have an identity of control and management because both entities are operated by Mr. Combs, who also manages and directs Plaintiffs' use of the VOTE OR DIE Mark on goods and/or services.

7.   Nevertheless, Defendant has attempted to hijack the VOTE OR DIE Mark now owned by Citizen Change and CE Trademark to establish a connection between Plaintiffs and Defendant's commercial activities – when no such connection has ever existed.

8.   Rather than develop a new trademark for Defendant's politically-inspired merchandising efforts, Defendant has engaged in bald opportunism by applying to register the mark VOTE OR DIE after the USPTO administratively cancelled the registration originally obtained by Citizen Change.  But that cancellation did not terminate the rights to the VOTE OR DIE Mark that are owned by Plaintiffs.

9.   Because Defendant's use of the mark VOTE OR DIE is likely to cause consumer confusion and to deceive purchasers – leading them to believe that Defendant's products bearing the mark VOTE OR DIE originate from Plaintiffs – this unlawful conduct must stop.

10. CE Trademark also seeks to enforce an oral contract under which GBG SJ agreed, among other things, to assign and transfer to CE Trademark its trademark application for VOTE OR DIE.  By continuing to seek a federal registration for VOTE OR DIE and by using that mark, GBG SJ has breached that agreement and caused CE Trademark to suffer damages.

## PARTIES

11. Plaintiff Citizen One, Inc. d/b/a Citizen Change is a New York not-for-profit corporation.  Citizen Change – which was established by Mr. Combs to encourage young people to vote for the candidates and issues of their choice, to educate people in the United States and around the world about the importance of democracy, and to instill the importance of participating in a democracy by voting – owns rights to the VOTE OR DIE Mark that is the subject of this action.

12. Plaintiff CE Trademark, LLC is a New York limited liability company.  CE Trademark, LLC is wholly owned by Mr. Combs, and is the entity that owns, among other things, rights to the VOTE OR DIE Mark and has filed multiple applications to register the mark VOTE OR DIE!.  CE Trademark and Citizen Change share common management and have a common interest and desire to protect the VOTE OR DIE Mark from misuse and infringement.

13. Upon information and belief, Defendant GBG SJ is a Delaware limited liability company with its principal place of business at 350 Fifth Avenue, 10th Floor, New York, New York 10118.

14. Upon information and belief, GBG SJ owns and operates, among other things, the website www.seanjohn.com (the "Sean John Website"), an interactive website that targets consumers in the State of New York – the fashion capital of the United States – and elsewhere.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. §§ 1331 and 1338(a), as the action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

16. Upon information and belief, the venue for this action is properly found in this judicial district under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York where Defendant conducts its business.

17. Upon information and belief, Defendant is subject to the personal jurisdiction of this Court because it has offices in the State of New York, and/or conducts business in this state using, among other things, interactive websites purposefully directed at New York residents, including the Sean John Website.

## BACKGROUND FACTS

### A.   Mr. Combs's Fame And Recognition

18. Mr. Combs is an iconic figure who is a cultural visionary.  He began his career at Uptown Records, a record label which was part of the Universal Music Group, before striking out on his own and founding Bad Boy Entertainment, a record label responsible for releasing iconic music and introducing the world to a roster of epic artists.

19. Mr. Combs has not only produced music for some of the biggest hip-hop artists and R&B acts of our times, but has also released multiple albums as an artist in his own right.  As a producer, performer, and label proprietor, he has achieved a level of success, recognition, and fame in the music industry that few ever attain.

20. He has not just confined his talents to creating music.  He has starred in movies, television shows, and performed on Broadway.  He has also set up charter schools for children in

underserved areas, and is responsible for founding, developing, acquiring, and promoting multiple brands in a variety of industries, including the fashion industry, where he launched the SEAN JOHN clothing brand in 1998.  The SEAN JOHN brand rose to critical and commercial success as a high-quality international lifestyle brand.

21. After decades in the spotlight, Mr. Combs has garnered a huge social media following.  Consumers of all ages and backgrounds around the world turn to Mr. Combs for cues and clues about the products and services that are worthy of their attention.

22. Because of Mr. Combs's ability to garner the attention of consumers, and to focus that attention on products and services he associates himself with, Mr. Combs is able to monetize his marketing power with companies that use and exploit his name, image, likeness, and persona. Over the course of his varied career, Mr. Combs has generated highly lucrative business opportunities through use of his name, image, likeness, and persona.

**B.  Mr. Combs's VOTE OR DIE Campaign**

23. During his time in the public arena, Mr. Combs has become a leading voice in supporting efforts to increase youth and minority participation in local and national electoral politics.

24. In 2004, Mr. Combs established Citizen Change and launched VOTE OR DIE, a nationwide non-partisan, voter-participation campaign.

25. Mr. Combs and Citizen Change used VOTE OR DIE on clothing, in nationwide commercials, as well as in nationwide voter registration events to help identify Citizen Change and its association with Mr. Combs's endeavors.

26. The VOTE OR DIE campaign was heavily promoted on MTV, BET, VH1, and other national media outlets.

27. Given Mr. Combs's international celebrity, the VOTE OR DIE campaign received broad media coverage and considerable attention from the public.  Other world-famous celebrities – including Ellen DeGeneres, Mariah Carey, Paris Hilton, Jay-Z, and Ashton Kutcher – joined Citizen Change's VOTE OR DIE campaign, appearing in advertising and marketing materials to support Citizen Change and its mission.

28. To further its mission, Citizen Change applied in 2004 to register the VOTE OR DIE Mark with the USPTO in various classes, including International Classes 25 (for clothing and apparel) and 26 (for ornamental novelty buttons and pins).

29. On April 27, 2010, Citizen Change was granted trademark registration of the VOTE OR DIE Mark (Reg. No. 3,782,770).

30. Christian Casey, LLC – a company founded by Mr. Combs that owned the SEAN JOHN brand that he created decades ago – never owned or controlled the VOTE OR DIE Mark.

31. Although the registration for the VOTE OR DIE Mark was administratively cancelled on December 2, 2016, for failure to file renewal documents, neither Citizen Change nor CE Trademark ever abandoned the VOTE OR DIE Mark and continued to use it.

32. For example, the VOTE OR DIE Mark was used by CE Trademark in 2018 when Mr. Combs appeared at a political event, wearing a t-shirt bearing the VOTE OR DIE Mark while promoting, among other things, awareness of the need for young people to participate in the political process.

33. Around the same time, CE Trademark also used the VOTE OR DIE Mark for that same purpose and others when Mr. Combs posted a photo in which he wore a t-shirt bearing the VOTE OR DIE Mark on social media with the hashtag "VoteOrDie".  CE Trademark's political

engagement efforts have included other posts in which Mr. Combs is wearing t-shirts with the VOTE OR DIE Mark.

**C. GBG SJ Buys the SEAN JOHN Brand
   and Attempts to Hijack the VOTE OR DIE Mark**

34. In or about November 2016, Christian Casey LLC and Jessie and D Lila LLC (collectively, the "Seller Parties") and GBG SJ and GBG USA, Inc. entered into the Asset Purchase Agreement (the "AP Agreement"), in which GBG SJ purchased the rights to the SEAN JOHN brand as well as other intellectual property (the "Purchased Assets").  GBG SJ is not a successor-in-interest to either of the Seller Parties.

35. Plaintiffs were not parties to the AP Agreement and never transferred to GBG SJ any rights in or title to the VOTE OR DIE Mark.

36. Neither Mr. Combs nor Plaintiffs have any direct ownership interest in Defendant, nor control Defendant, or have the right to control the SEAN JOHN brand.

37. In or about November 2019, GBG SJ filed a trademark application for the mark VOTE OR DIE – the exact same mark as the VOTE OR DIE Mark that was successfully registered by Citizen Change in 2010.

38. GBG SJ applied to register VOTE OR DIE (Ser. No. 88/679,181) (the "Illegitimate VOTE OR DIE Mark") in International Classes 25 (for clothing and apparel) and 26 (for ornamental novelty buttons and pins) – two of the same classes covered by the Citizen Change registration for the VOTE OR DIE Mark.

39. Upon information and belief, when GBG SJ applied for the Illegitimate VOTE OR DIE Mark, it was aware of Plaintiffs' ownership, use, and entitlement to the VOTE OR DIE Mark.

40. Neither Mr. Combs nor Plaintiffs ever authorized, approved of, or consented to GBG SJ's trademark application for the Illegitimate VOTE OR DIE Mark.  And, upon information

and belief, when GBG SJ applied to register the Illegitimate VOTE OR DIE Mark, it knew that neither Mr. Combs nor Plaintiffs authorized, approved of, or consented to GBG SJ's trademark application for the Illegitimate VOTE OR DIE Mark.

41. In February 2020, the USPTO issued a "NONFINAL OFFICE ACTION" (the "NOA") notifying GBG SJ that its application for the Illegitimate VOTE OR DIE Mark "is refused registration" and would not proceed unless it responded to the USPTO's reasons for refusal "by submitting evidence and arguments in support of registration."

42. In the NOA, the USPTO refused GBG SJ's application for the Illegitimate VOTE OR DIE Mark "because the applied for mark is a slogan or term that does not function as a trademark or service mark to indicate the applicant's goods and/or services and to identify and distinguish them from others."

43. The USTPO explained in the NOA "that th[e] term or phrase [VOTE OR DIE] is a commonly used message that conveys the importance of voting in elections" and that "[b]ecause consumers are accustomed to seeing this message used in ordinary language by many different sources, they would not perceive it as a mark that identifies the source of applicant's goods and/or services but rather only as conveying an informational message."

44. When Mr. Combs discovered that GBG SJ applied to register the Illegitimate VOTE OR DIE Mark for use by the SEAN JOHN brand, he objected to GBG SJ's attempt to usurp Plaintiffs' rights to the VOTE OR DIE Mark.

45. After Mr. Combs objected to GBG SJ's decision to file an application for the Illegitimate VOTE OR DIE Mark, GBG SJ and CE Trademark entered into an oral agreement for GBG SJ to assign and transfer to CE Trademark the application for the Illegitimate VOTE OR DIE

Mark and any purported rights GBG SJ claimed in the Illegitimate VOTE OR DIE Mark (the "Transfer Agreement").

46. Under the Transfer Agreement, GBG SJ also promised not to use the Illegitimate VOTE OR DIE Mark, or to pursue its application for the Illegitimate VOTE OR DIE Mark.

47. But in August 2020, and despite the Transfer Agreement, GBG SJ responded to the USPTO's "NONFINAL OFFICE ACTION" to pursue the registration for the Illegitimate VOTE OR DIE Mark.

48. In its response, GBG SJ argued, among other things, the following: (a) the USPTO's Examining Attorney failed to provide evidence showing that the VOTE OR DIE mark does not function as a trademark; (b) GBG SJ's use and third-party uses of the VOTE OR DIE mark show that it serves as a trademark; and (c) the USPTO previously determined that VOTE OR DIE serves a source-identifying function.

49. GBG SJ falsely claimed that VOTE OR DIE functions as a trademark because "the vast majority of the evidence provided by the Examining Attorney refers to [GBG SJ] and persons and entities related to [GBG SJ], *including Citizen Change and P. Diddy [a/k/a Sean Combs]*, or appears to be a parody or knock-off of [GBG SJ's] goods" (the "First False Statement"). (Emphasis added.)

50. Upon information and belief, GBG SJ made the First False Statement to convey falsely that GBG SJ is, among other things, the source of the authentic goods that bear the mark VOTE OR DIE, and that GBG SJ is "related" to Mr. Combs and Citizen Change.

51. GBG SJ further claimed that because "P. Diddy is affiliated with and is a partial owner of [GBG SJ] … the vast majority of the Examining Attorney's evidence is associated with

[GBG SJ] and does not support the conclusion that [VOTE OR DIE] cannot serve as an indicator of source" (the "Second False Statement").

52. Upon information and belief, GBG SJ made the Second False Statement to convey the false impression that Mr. Combs and Plaintiffs approve of and condone GBG SJ's attempt to register the Illegitimate VOTE OR DIE Mark, when they do not.

53. In addition, GBG SJ argued that "VOTE OR DIE" is "perceived as singularly related to [GBG SJ] and its related persons/entities and indicating a single source of [GBG SJ's] [g]oods" (the "Third False Statement," and together with the First False Statement and the Second False Statement, the "False Statements").

54. Upon information and belief, GBG SJ made the Third False Statement to convey falsely that GBG SJ is and was the single source of goods bearing the VOTE OR DIE Mark, when it knows that it is not such source.

55. Upon information and belief, GBG SJ's False Statements were made with the intent of causing the USPTO to mistakenly believe that a connection exists between Plaintiffs, on the one hand, and GBG SJ, on the other, and, in reliance on those False Statements, to allow the publication of the Illegitimate VOTE OR DIE Mark, thereby furthering GBG SJ's application to obtain registration of that mark.

56. Upon information and belief, in reliance upon the False Statements in GBG SJ's response to the NOA, the USPTO allowed the Illegitimate VOTE OR DIE Mark to continue its registration process and to be published in the Trademark Official Gazette on September 29, 2020.

57. Upon information and belief, before GBG SJ filed its registration for the Illegitimate VOTE OR DIE Mark, not only did it know of Plaintiffs' prior use of the VOTE OR DIE Mark, but it also knew that mark had not been abandoned by Plaintiffs.

### D.  **Mr. Combs Adopts a New VOTE OR DIE Trademark**

58. Earlier this year, Mr. Combs recognized the opportunity to re-engage with voters during what he considered to be the most consequential presidential election of his lifetime.

59. Thus, in September 2020, CE Trademark applied to register the mark VOTE OR DIE! (the "New VOTE OR DIE Mark") in International Classes 41 (for, among other things, organizing and conducting special events for social entertainment purposes) (Ser. No. 90/157,964); 36 (for, among other things, charitable fundraising services; financial sponsorship of cultural community and social activities; and political campaigns) (Ser. No. 90/157,944); and 35 (for, among other things, promoting public awareness of community issues, cultural issues, social welfare, people, politics and people, communities and organizations in need) (Ser. No. 90/157,914).

60. That same month, Mr. Combs kicked-off a "VOTE OR DIE" branded town hall event titled "State of Emergency: Election Day and Black America," which featured Dr. Cornel West and Kerry Washington.

61. The following month, CE Trademark also applied to register the New VOTE OR DIE Mark in International Class 25 (for, among other things, belts, bottoms as clothing, coats, dresses, and tops as clothing) (Ser. No. 90/242,218).

62. Mr. Combs's introduction of the New VOTE OR DIE Mark to a new audience was covered by the media on October 14, 2020, including by The Hollywood Reporter and the website www.prnewswire.com.

63. The following day, GBG SJ's decision to relaunch a "VOTE OR DIE!" campaign was reported in the media by the website www.hypebeast.com.

64. GBG SJ's relaunch of the Illegitimate VOTE OR DIE Mark is reflected on The Sean John Website, which contains navigation tabs at the top of the homepage that allow users to easily identify products and information they may be seeking to purchase.

65. The Sean John Website also has navigation tabs for "COLLECTIONS" and "FASHIONTAINMENT", both of which allow users to access GBG SJ's VOTE OR DIE clothing collection.  Among the items for purchase is a t-shirt emblazoned with "VOTE OR DIE!".

66. Plaintiffs are also using the VOTE OR DIE Mark and the New VOTE OR DIE Mark in commerce by licensing the marks to REVOLT Media And TV, LLC, which has made and offered for sale t-shirts emblazoned with "VOTE OR DIE!".

67. Upon information and belief, GBG SJ's wrongful and fraudulent application to register the Illegitimate VOTE OR DIE Mark, and its use of that mark, is designed to trade off of the VOTE OR DIE Mark and its goodwill, which is synonymous with  Mr. Combs, and to thereby increase GBG SJ's exposure, promotion, advertising, and economic prospects.

68. The VOTE OR DIE Mark and the New VOTE OR DIE Mark are not connected to or associated with GBG SJ's use of the Illegitimate VOTE OR DIE Mark.

69. And GBG SJ's use of the Illegitimate VOTE OR DIE Mark is not connected to or associated with the VOTE OR DIE Mark or the New VOTE OR DIE Mark.

70. Upon information and belief, GBG SJ is pursuing the registration of the Illegitimate VOTE OR DIE Mark and using that mark in bad faith.

## COUNT I
### (Breach of Contract)

71. CE Trademark repeats and realleges the allegations in paragraphs 1 through 70 as if set forth at length herein.

12

72. CE Trademark and GBG SJ entered into the Transfer Agreement, which is a valid and enforceable agreement.

73. GBG SJ has breached the Transfer Agreement by, among other things, failing to transfer and assign to CE Trademark its application for the Illegitimate VOTE OR DIE Mark, using the Illegitimate VOTE OR DIE Mark on goods, and pursuing its application for the Illegitimate VOTE OR DIE Mark.

74. CE Trademark has performed all of its obligations under the Transfer Agreement.

75. GBG SJ's conduct has damaged CE Trademark in an amount to be determined at trial.

**COUNT II**
**(Unfair Competition, 15 U.S.C. § 1125(a))**

76. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 75 as if set forth at length herein.

77. Plaintiffs have neither approved of nor ever endorsed GBG SJ's use of the Illegitimate VOTE OR DIE Mark in conjunction with any goods distributed in commerce.

78. Plaintiffs did not participate in any aspect of GBG SJ's decision to use the Illegitimate VOTE OR DIE Mark on, or in connection with, any goods distributed in commerce.

79. The Illegitimate VOTE OR DIE MARK is identical to the VOTE OR DIE Mark owned by Plaintiffs, which mark predates the Illegitimate VOTE OR DIE Mark, and which consumers associate with Plaintiffs.

80. GBG SJ has used and is using the Illegitimate VOTE OR DIE Mark, which is identical to the VOTE OR DIE Mark, in a manner that is likely to cause consumers to be confused, mistaken, or deceived about the origin of GBG SJ's products, and the affiliation, connection, or

association between Plaintiffs and GBG SJ's products that bear the Illegitimate VOTE OR DIE Mark.

81. GBG SJ has used and is using, among other things, the Illegitimate VOTE OR DIE Mark in a manner that is likely to cause consumers to be confused, mistaken, or deceived concerning whether Plaintiffs endorse, sponsor, or approve of GBG SJ's goods that bear the Illegitimate VOTE OR DIE MARK.

82. GBG SJ has intentionally used the Illegitimate VOTE OR DIE Mark in connection with the advertisement, promotion, sale, offering for sale, and distribution of its goods, knowing that it did not have Plaintiffs' permission or consent to do so.

83. GBG SJ's unauthorized use of the Illegitimate VOTE OR DIE Mark in connection with the advertisement, promotion, sale, offering for sale, and distribution of goods bearing that mark on the Sean John Website or elsewhere constitutes GBG SJ's use of the Illegitimate VOTE OR DIE Mark in commerce.

84. GBG SJ is unlawfully benefiting and profiting from the use of the Illegitimate VOTE OR DIE Mark by falsely creating the misperception and belief among consumers that GBG SJ's goods that bear that mark originate from, are affiliated, connected, or associated with, and/or are endorsed, sponsored, or approved by Plaintiffs.

85. GBG SJ has misappropriated the goodwill from the VOTE OR DIE Mark and misdirected that goodwill to GBG SJ's goods that bear the Illegitimate VOTE OR DIE Mark.

86. GBG SJ's acts constitute a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

87. As the direct and proximate result of the foregoing wrongful acts by GBG SJ, Plaintiffs have suffered, and will continue to suffer, monetary damages and irreparable injury to their reputation and goodwill for which there is no adequate remedy at law.

88. GBG SJ has made, and will likely continue to make, substantial profits and gains from its unlawful use of the Illegitimate VOTE OR DIE Mark, which it is not entitled to receive, whether in law or in equity.

89. Plaintiffs have no adequate remedy at law unless GBG SJ is permanently enjoined and restrained by the Court from using the Illegitimate VOTE OR DIE Mark in commerce.

90. Plaintiffs demand an injunction against GBG SJ to  enjoin and restrain it from any further use of the Illegitimate VOTE OR DIE Mark in commerce.

91.   Plaintiffs also demand recovery of their damages from GBG SJ, as well as the profits that GBG SJ has earned from its unlawful use of the Illegitimate VOTE OR DIE Mark.

<u>COUNT III</u>
**(Common Law Trademark Infringement)**

92. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 91 as if set forth at length herein.

93. Although it is no longer registered with the USPTO, the VOTE OR DIE Mark is a valid and protectible trademark.

94. The VOTE OR DIE Mark is owned by Plaintiffs.

95. GBG SJ's subsequent use of the Illegitimate VOTE OR DIE Mark, which is identical to the VOTE OR DIE Mark, is likely to cause consumer confusion as to the origin and/or sponsorship of GBG SJ's goods that bear the Illegitimate VOTE OR DIE Mark, causing consumers to believe that GBG SJ's goods originate and/or are sponsored by Plaintiffs.

96. GBG SJ's wrongful acts have caused, and likely will continue to cause, confusion with Plaintiffs' VOTE OR DIE Mark, and thereby constitute trademark infringement in violation of the common law.

97. As the direct and proximate result of the foregoing wrongful acts by GBG SJ, Plaintiffs have suffered, and will continue to suffer, monetary damages and irreparable injury to their reputation and goodwill for which there is no adequate remedy at law.

98. GBG SJ has made, and will likely continue to make, substantial profits and gains from its unlawful use of the Illegitimate VOTE OR DIE Mark, which it is not entitled to receive, whether in law or in equity.

99. Plaintiffs have no adequate remedy at law unless GBG SJ is permanently enjoined and restrained by the Court from using the Illegitimate VOTE OR DIE Mark in commerce.

100.  Plaintiffs demand an injunction against GBG SJ to enjoin and restrain it from any further unlawful use of the Illegitimate VOTE OR DIE Mark in commerce.

101.  Plaintiffs also demand recovery of their damages from GBG SJ, as well as the profits that GBG SJ has earned from its unlawful use of the Illegitimate VOTE OR DIE Mark.

### COUNT IV
### (Common Law Unfair Competition)

102.  Plaintiffs repeat and reallege the allegations in paragraphs 1 through 101 as if set forth at length herein.

103.  GBG SJ has violated Plaintiffs' common law rights in the VOTE OR DIE Mark and engaged in unfair competition by adopting the Illegitimate VOTE OR DIE Mark in bad faith, which mark is identical to the VOTE OR DIE Mark, and by trading off of Plaintiffs' reputation and goodwill, competing unfairly with them, and by creating a false association between Plaintiffs and GBG SJ.

104.  GBG SJ's misappropriation of the VOTE OR DIE Mark, along with its associated reputation and goodwill, is likely to cause consumer confusion or to deceive purchasers as to the origin of GBG SJ's goods that bear the Illegitimate VOTE OR DIE Mark.

105.  GBG SJ has also misappropriated Plaintiffs' labor and expenditures to create and own  VOTE OR DIE Mark, which was first obtained by Citizen Change long before GBG SJ applied to register and use the Illegitimate VOTE OR DIE Mark, causing consumers and purchasers to believe that GBG SJ's goods originate from Plaintiffs.

106.  GBG SJ's wrongful acts have caused, and likely will continue to cause, confusion with Plaintiffs' VOTE OR DIE Mark, and thereby constitute unfair competition in violation of the common law.

107.  As the direct and proximate result of the foregoing wrongful acts by GBG SJ, Plaintiffs have suffered, and will continue to suffer, monetary damages and irreparable injury to their reputations and goodwill for which there is no adequate remedy at law.

108.  GBG SJ has made, and will likely continue to make, substantial profits and gains from its use of the Illegitimate VOTE OR DIE Mark, which it is not entitled to receive, whether in law or in equity.

109.  Plaintiffs have no adequate remedy at law unless GBG SJ is permanently enjoined and restrained from unlawfully using the Illegitimate VOTE OR DIE Mark in commerce.

110.  Plaintiffs demand an injunction against GBG SJ to enjoin and restrain it from any further unlawful use of the Illegitimate VOTE OR DIE Mark in commerce.

111.  Plaintiffs also demand recovery of their damages from GBG SJ, as well as the profits that GBG SJ has earned from its unlawful use of the Illegitimate VOTE OR DIE Mark.

## COUNT V
### (Deceptive Practices, N.Y. Gen. Bus. Law § 349)

112.  Plaintiffs repeat and reallege the allegations in paragraphs 1 through 111 as if set forth at length herein.

113.  GBG SJ has been and is engaged in deceptive acts and practices in the conduct of its business, trade or commerce, materially misleading consumers into falsely believing that its sale of goods bearing the Illegitimate VOTE OR DIE Mark originates from, is authorized by, or affiliated with, Plaintiffs, in violation of N.Y. Gen. Bus. Law § 349.

114.  Upon information and belief, GBG SJ has made, and will continue to make, substantial profits and gains, which it is not entitled to receive, whether in law or equity.

115.  GBG SJ's unlawful acts have damaged and will continue to damage Plaintiffs.

116.  Upon information and belief, GBG SJ intends to continue its infringing acts.

117.  Plaintiffs have no adequate remedy at law unless GBG SJ is permanently enjoined and restrained from pursuing such acts in the future.

118.  Plaintiffs demand an injunction against GBG SJ to enjoin and restrain it from any further unlawful use of the Illegitimate VOTE OR DIE Mark in commerce.

## COUNT VI
### (Unjust Enrichment)

119.  Plaintiffs repeat and reallege the allegations in paragraphs 1 through 118 as if set forth at length herein.

120.  The acts complained of above constitute GBG SJ's unjust enrichment at Plaintiffs' expense.

121.   In equity and good conscience, GBG SJ should not be entitled to retain and benefit from the value of the time, effort, and money Plaintiffs have invested into developing the goodwill associated with the VOTE OR DIE Mark.

122.   GBG SJ's acts have damaged and will continue to damage Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against GBG SJ as follows:

A.   Under Count I, awarding CE Trademark damages in an amount to be proven at trial, but not less than $10,000,000.

B.   Under Count II, awarding Plaintiffs damages in an amount to be proven at trial, but not less than $10,000,000, ordering GBG SJ to account to and pay to Plaintiffs all profits realized by GBG SJ's wrongful acts in accordance with 15 U.S.C. § 1117, and directing that such profits and actual damages be trebled in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117.

C.   Under Count III, awarding Plaintiffs damages in an amount to be proven at trial, but not less than $10,000,000, and ordering GBG SJ to account to and pay to Plaintiffs all profits realized by GBG SJ's wrongful acts in accordance with the common law.

D.   Under Count IV, awarding Plaintiffs damages in an amount to be proven at trial, but not less than $10,000,000, and ordering GBG SJ to account to and pay to Plaintiffs all profits realized by GBG SJ's wrongful acts in accordance with the common law.

E.   Under Count V, awarding Plaintiffs damages in an amount to be proven at trial, but not less than $10,000,000, and ordering GBG SJ to account to and pay to Plaintiffs all profits realized by GBG SJ's wrongful acts in accordance with N.Y. Gen Bus. Law § 349.

F.   Under Count VI, awarding Plaintiffs damages in an amount to be proven at trial, but not less than $10,000,000.

G.  Granting an injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure , 15 U.S.C. §§ 1116(a) and 1125(a), N.Y. Gen. Bus. Law § 349, and the common law preliminarily and permanently restraining and enjoining GBG SJ, its officers, agents, employees, and attorneys, and all those persons or entities acting in concert or participation with it from:

1.  Using, exploiting, or displaying the Illegitimate VOTE OR DIE Mark in any way and for any purpose, including for purposes of advertising or promoting any of GBG SJ's goods or services, including any product manufactured, sold, or distributed by it, now or in the future, without Plaintiffs' written consent or permission.

2.  Using or displaying the Illegitimate VOTE OR DIE Mark on any website, webpage, or  any other method to distribute information without Plaintiffs' written consent or permission.

H.  Ordering GBG SJ to file with this Court and to serve on Plaintiffs within thirty (30) days after entry of the injunction a written report under oath setting forth in detail the manner and form in which GBG SJ has complied with the injunction.

I.  Directing such other and further relief as the Court may deem appropriate to prevent consumers, the public, and the trade from deriving any erroneous impression that Plaintiffs have endorsed, sponsored, or approved of any GBG SJ goods that bear the Illegitimate VOTE OR DIE Mark, or have been affiliated, connected, or associated with any of GBG SJ's goods that bear the Illegitimate VOTE OR DIE Mark, including the creation, design, advertising, or sale of any such goods.

J.  Awarding Plaintiffs any punitive damages under applicable federal or state law, statute, or rule.

K.  Awarding Plaintiffs their costs, attorney's fees, and expenses to the full extent

provided for under federal or state law.

L.   Awarding Plaintiffs pre-judgment interest on any monetary award made part of the judgment against GBG SJ.

M.  Awarding Plaintiffs such additional and further relief as the Court deems just and proper.

Dated:   February 9, 2021
              New York, New York

JONATHAN D. DAVIS, P.C.


By:      */s/ Jonathan D. Davis*
           Jonathan D. Davis
           Derek A. Williams
           Milton E. Otto
           10 Rockefeller Plaza
           Suite 1015
           New York, New York 10020
           (212) 687-5464

           *Attorneys for Plaintiffs Citizen Change*
           *and CE Trademark*

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury.

Dated:  February 9, 2021
       New York, New York

                            JONATHAN D. DAVIS, P.C.

                 By:    */s/ Jonathan D. Davis*
                          Jonathan D. Davis
                          Derek A. Williams
                          Milton E. Otto
                          10 Rockefeller Plaza
                          Suite 1015
                          New York, New York 10020
                          (212) 687-5464

                          *Attorneys for Plaintiffs Citizen Change*
                          *and CE Trademark*